UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPYGLASS CAPITAL PARTNERS, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-CV-03478 |
| | § | |
| STEPHEN X. KIM and FRED NOLTE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Stephen X. Kim's Consolidated Motion to Dismiss (Doc. No. 20), requesting dismissal of Plaintiff's claim for market manipulation. After carefully considering the Motion, Plaintiff's Response (Doc. No. 23), and all relevant law, the Court finds that Defendant Kim's Motion should be denied.

### I.   BACKGROUND

Plaintiff Spyglass Capital Partners, L.P. ("Spyglass"), a partnership of investors, brings this case alleging that its former general partner, Defendant Stephen X. Kim ("Kim"), induced Spyglass' six limited partners to purchase securities in Kim's investment scheme by making material misrepresentations and omissions about his background, qualifications, and investment intent. Spyglass alleges that Kim subsequently lost the majority of that money through incompetence, inexperience, embezzlement, misappropriation, conversion, breach of fiduciary duty, and fraud. (First Amend. Orig. Compl., Doc. No. 12, ¶¶ 1.) In total, Spyglass asserts ten claims for relief based on the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5 promulgated by the Securities and Exchange Commission under that Act, 17 C.F.R. § 240.10b-5;

Texas Business and Commerce Code § 27.01; the Texas Securities Act § 33; and the common law. (First Amend. Orig. Compl., Doc. No. 12, ¶¶ 38-94.) All but the ninth claim, alleging the vicarious liability of Defendant Fred Nolte, are made against Kim.

## II. KIM'S MOTION TO DISMISS

### A. Legal Standards

Kim moves to dismiss only Spyglass' second claim, which alleges market manipulation under Rule 10b-5, for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).[1] When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)).

### B. Analysis

Kim's Motion to Dismiss argues that Spyglass' claim for market manipulation fails to state a claim because it fails to allege that Kim ever offered any securities in any well-developed, efficient market. Relying on *Nathenson v. Zonagen, Inc.*, 267 F.3d 400 (5th Cir. 2001), Kim argues that acting to deceive a public investing market as a whole is "fundamental" to a claim of market manipulation, and therefore that the market being manipulated must be an open and

---

[1] This Order addresses Defendant Kim's second Consolidated Motion to Dismiss (Doc. No. 23). His first motion by that same name (Doc. No. 11) moved to dismiss a number of the claims asserted in Spyglass' Original Complaint (Doc. No. 1). Spyglass subsequently filed an Amended Complaint (Doc. No. 12) that addressed all but one of Kim's objections to the Original Complaint. Accordingly, the instant Motion raises only the limited question of whether Spyglass' second claim for relief in its Amended Complaint sufficiently states a claim for market manipulation.

efficient market. (Def. Kim's Mot. Dismiss, Doc. No. 17, at 2-5.) In response, Spyglass, citing *Abell v. Potomac Ins. Co.*, 858 F.2d 1104 (5th Cir. 1988), *vacated on other grounds sub. nom. Fryar v. Abell*, 492 U.S. 914 (1989), argues that its claim for market manipulation does not depend on the existence of a well-developed, efficient market because its claim is based on the alleged fact that Kim was not entitled to market the securities in the first place. (Pl.'s Resp., Doc No. 23, at 2.)

Spyglass' argument is correct. To bring a claim for fraud under Rule 12b-5, a plaintiff must show, among other things, that he relied on the misrepresentations at issue. *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 661 (5th Cir. 2004) ("To state a private securities fraud claim under § 10(b) and Rule 10b-5, a plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) *on which the plaintiff relied* (5) that proximately caused the plaintiff's injury." (quotation omitted, emphasis in original)). One way to show reliance is by alleging fraud on the market, by which reliance on the price of a security is deemed a sufficient surrogate for reliance on the misrepresentations themselves. *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988) (explaining and approving of the fraud-on-the-market theory); *see also Oscar Private Equity v. Allegiance Telecom*, 487 F.3d 261, 264-65 (5th Cir. 2007) (same). In the Fifth Circuit, a plaintiff may properly use fraud-on-the-market theory to show reliance where "no active, efficient secondary market existed in which to trade the subject securities" if the plaintiff proves that "the defendants conspired to bring to market securities that were not entitled to be marketed." *Abell*, 858 F.2d at 1121 (citing *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981) (en banc), *cert. denied*, 459 U.S. 1102 (1983)). "Not entitled to be marketed" means that "the promoters knew the enterprise was patently worthless." *Id.* at 1122.

It is true that *Nathenson* contains language that appears to support Kim's position: "[I]n order to avail themselves of the fraud on the market theory and the benefit of not having to plead specific reliance on the alleged misstatement or omission, plaintiffs have to allege that the stock in question traded on an open and efficient market." 267 F.3d at 414 n.12 (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3rd Cir. 1997)). The Court also recognizes a certain tension between Spyglass' position and *Basic*, the rationale of which was premised on the existence of efficient, information-hungry markets. 485 U.S. 224 (1988). But the Fifth Circuit recently acknowledged that *Abell* and *Shores* are still good law on the matters relevant to this Motion. *See Regents of University of California v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 391-92 & n.35 (5th Cir. 2007) (recognizing "fraud-created-the-market" theories of reliance by citing *Abell* and *Shores*). Moreover, to the extent *Nathenson* conflicts with *Abell* and *Shores*, *Abell* and *Shores* control. *See Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 542 (5th Cir. 2007) ("When there are conflicting panel decisions, the earliest panel decision controls." (citing *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 410 (5th Cir. 2006))). Kim's reliance on *Nathenson* is therefore misplaced, and Spyglass has sufficiently alleged both actual and fraud-on-the-market reliance. Whether those allegations can be proven is a matter for the summary judgment phase of this lawsuit.

### III.   CONCLUSION

For these reasons, Defendant Stephen X. Kim's Consolidated Motion to Dismiss (Doc. No. 20) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 11ve day of March, 2008.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.